FILED

2020 Sep-28  PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **MELINDA REAVES,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  4:19-CV-01822-RDP** |
| } | |
| **ANDREW SAUL, Commissioner of Social** } | |
| **Security,** } | |
| } | |
| **Defendant.** } | |

## <u>MEMORANDUM OF DECISION</u>

Melinda Reaves ("Plaintiff") brings this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  42 U.S.C. §§ 405(g), 1383(c). (R. 1).  Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.    PROCEEDINGS BELOW

On June 25, 2016, Plaintiff filed applications for disability, DIB, and SSI, alleging a period of disability beginning on May 5, 2016.[1]  (R. 109, 181, 187).  Plaintiff's applications were initially denied by the Social Security Administration on September 9, 2016.  (R. 109, 115).  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was granted.  (R. 54-74,

---

[1] An individual cannot receive SSI for any period prior to the month in which she filed her application.  *See* 20 C.F.R. §§ 416.330, 416.335.  Thus, the relevant period for deciding Plaintiff's case is the month in which she filed her SSI application, May 2016, through the date of the ALJ's decision, and not from her alleged onset date to the date of the ALJ's decision.

122-23).  On August 1, 2018, ALJ Jerome Mumford held an oral hearing with Plaintiff, her counsel, and a vocational expert ("VE"), John Long, who appeared in person.  (R. 56, 71).  On October 25, 2018, the ALJ denied Plaintiff's applications.  (R. 37-44).  The ALJ determined that Plaintiff had not been disabled within the meaning of §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act between June 25, 2016 and the date of the decision.  (*Id.*).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1), making the ALJ's decision the final decision of the Commissioner and ripe for judicial review under 42 U.S.C. §§ 405(g) and 1383(c).

## II.    FACTS

At the time of the hearing, Plaintiff was 44 years old, possessed a GED, and had taken some college courses.  (R. 60-63).  Plaintiff has previous work experience as a nursing home and private home caregiver, and as a warranty administrator for a car dealership.  (R. 62-63, 201-02, 219).  According to Plaintiff, she has been disabled since May 5, 2016 due to injuries sustained in an automobile accident.  (R. 109, 181, 187).  Plaintiff alleges that the automobile accident resulted in a broken hip, pelvis, and femur on the right side, and crushed her ankle on the left side, all of which continue to cause her to suffer pain and swelling. (R. 63, 374-75, 392-93).  Plaintiff further alleges that she suffers from several mental impairments as a result of the accident including bipolar syndrome, post-traumatic stress disorder ("PTSD"), depression, and anxiety.  (R. 62-63, 209).  Plaintiff claims that she cannot sit or stand for long periods, can only lift and/or carry about ten pounds, spends half the day lying down, and while driving will occasionally need to pull over due to severe anxiety attacks.  (R. 60-65).  Plaintiff does not need an ambulatory device to walk, but says she can only walk for about 5-10 minutes. (R. 64-65). She only drives herself short distances, and takes care of her sixteen-year-old daughter.  (R. 60).  Plaintiff alleges that as a result of this inactive lifestyle, she has gained approximately fifteen pounds of weight.  (R. 61).

On September 8, 2016, Plaintiff presented at Riverview Regional Medical Center ("Riverview") complaining of throbbing pain in her left ankle but she demonstrated normal range of motion, no swelling, no ecchymosis, no deformity, and normal tenderness.  (R. 376-77).  Plaintiff received follow-up care in October 2016 at Mercy Medical Clinic where she reported pain in her left ankle.  (R. 362).  Examination showed that Plaintiff had no gross impairment to active range of motion, but that her ankle was deformed due to edema and multiple scars.  (R. 363).  Subsequently, Plaintiff was referred to pain management specialists for treatment; however, there is no evidence that Plaintiff sought treatment for her ankle.  (*Id.*).

On January 22, 2017, Plaintiff presented at the emergency department at Riverview complaining of right hip pain.  (R. 379).  Upon inspection, her right hip and pelvis appeared normal with limited range of motion but no obvious deformity.  (R. 381).  Six months later, Plaintiff presented at Riverview on July 25, 2017, reporting pain in her right hip.  (R. 382-83).  The physician's report again found no swelling or deformity in the right hip and pelvis and that Plaintiff could exhibit a normal range of motion.  (*Id.*).

On October 6, 2017, Plaintiff presented at Quality of Life Health Complex ("Quality of Life") with a complaint of pain in her left ankle.  (R. 438).  Though Plaintiff required no ambulatory assistive device to walk, she expressed tenderness in her right hip accompanied by mild pain with motion and she exhibited a moderate reduced range of motion in her left ankle.  (R. 443).  Six months later, on April 11, 2018, Plaintiff presented again at Quality of Life with complaints of knee pain.  (R. 429).  Upon examination, the findings report noted that Plaintiff limped when walking, experienced slight tenderness in both knees, and that both knees had a moderately reduced range of motion.  (R. 433).  One month later, on May 16, 2018, Plaintiff again visited Quality of Life with similar complaints of knee pain.  (R. 423).  The findings noted slight

swelling in both knees which contributed to Plaintiff's limping. (R. 427). However, she had no crepitus, decrease in her mobility, edema, or calf tenderness.

On April 20, 2018, Plaintiff presented at Gadsden Orthopaedics with complaints of knee pain. (R. 454-55). Examination findings show that Plaintiff did not have a particular knee injury, but she did have slight joint swelling, loss of strength, joint pain, muscle cramps, and moderate crepitus in both knees. (*Id.*). Plaintiff presented back at Gadsden Orthopaedics on May 24, 2018, complaining that she "just hurt[] all over." (R. 449). Physical examinations of Plaintiff revealed crepitus in both knees; however, she exhibited a normal range of motion and alignment with no stability issues. (R. 449-50).

From February 19, 2015 through February 16, 2016, Plaintiff presented at Carr Mental Wellness. (R. 295-312, 352-59). In nearly all her visits prior to the automobile accident, Plaintiff presented complaints of feeling depressed. (R. 302, 305, 309, 311). The reports note Plaintiff's depressed mood but also indicate that she possessed intact cognition, intact judgment, linear and goal directed thought processes, and had no psychotic thoughts. (R. 298, 303, 306, 310). Starting on July 18, 2016, which was after her automobile accident and after her alleged onset date of disability, the objective and subjective reports record her mood as happy and her affect as congruent with her mood. (R. 357). This trend continued through her next visit on October 10, 2016. (R. 354). On that date, Plaintiff reported that she was doing better but still had trouble with her ankle and that her anxiety and depression were high due to her inability to do things she previously could. (*Id.*). The objective report on October 10, 2016, noted that Plaintiff presented in a happy mood, with no psychotic or homicidal thoughts, no impairment in speech, grossly intact cognition, intact insight, and intact judgment. (*Id.*). However, the report notes that Plaintiff had thoughts of not waking up. (*Id.*).

## III.     ALJ DECISION

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial work activity" is work activity that involves significant physical or mental activities.  20 C.F.R. § 404.1572(a).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, then the claimant is declared disabled.  20 C.F.R. § 404.1520(d).

Even if the claimant cannot be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f).  If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled.  20 C.F.R. § 404.1560(b)(3).  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(g)(1).  In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. §

404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since her alleged onset date of disability, May 5, 2016, and (2) that she suffers from the following severe impairments that significantly limit her ability to perform basic work activities: PTSD; anxiety disorder; depression; a right hip fracture with status post open reduction internal fixation; left ankle fracture with status post open reduction internal fixation; and bilateral knee degenerative joint disease. (R. 40). However, the ALJ concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*) After consideration of the entire record, the ALJ determined that Plaintiff retains the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations: she could not push or pull with her bilateral lower extremity; no operation of foot controls with the left lower extremity; occasional stooping and crouching; no climbing; no driving; no contact with the general public; occasional contact with co-workers and supervisors; and is restricted to work that does not involve heavy physical labor. (R. 42). Following the testimony of the VE, the ALJ determined that Plaintiff was precluded from performing her past relevant work as an office helper and home health aide. (R. 47). But, the ALJ further concluded that Plaintiff was not disabled as defined by the Act because her age, education, work experience, and RFC allow her to perform jobs existing in significant numbers in the national economy at the date last insured. (R. 47-48). The ALJ also concluded that Plaintiff had not been under a disability at any time between May 5, 2016 through the date of the ALJ's decision, October 25, 2018. (R. 48-49).

6

## IV.    PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

Plaintiff presents three arguments for reversing the decision of the ALJ.  First, she contends that the ALJ was biased in his decision and failed to accord proper weight to the opinions of two medical expert sources: Dr. Iyer and Dr. Estock.  Specifically, Plaintiff contends that the ALJ failed to show good cause for not giving the physicians' opinions substantial weight.  Second, Plaintiff argues that the Appeals Council improperly denied her request that it review additional evidence she submitted after the ALJ's decision on October 25, 2018.  Third, Plaintiff alleges that the ALJ's decision as a whole was not based on substantial evidence, especially when the submissions to the Appeals Council are considered.

## V.    STANDARD OF REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).  Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VI.    DISCUSSION

### A.    The ALJ Properly Weighed the Medical Source Opinions in Assessing Plaintiff's RFC and Plaintiff's Allegations of Prejudice are Unfounded.

Plaintiff's first argument is that the ALJ was biased in his decision and failed to accord proper weight to the testimony of two reviewing medical sources: Dr. Iyer and Dr. Estock. Specifically, Plaintiff claims that the ALJ failed to show good cause for not giving the opinions of Dr. Iyer and Dr. Estock prevailing weight. But, as explained more fully below, this argument is unpersuasive for at least two reasons: (1) the RFC determination is the province of the ALJ alone; and (2) the ALJ's reasons for discounting the two physician's opinions are supported by substantial evidence. Additionally, Plaintiff has failed to overcome her burden of proving the ALJ was biased in his decision.

### i.    The ALJ's Decision to Attribute Less Weight to Dr. Iyer and Dr. Estock's Opinion is Proper.

It is emphatically the duty of the ALJ to make a claimant's RFC determination at step four of the disability analysis. *See* 20 C.F.R. § 404.1546; *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016). This court has long recognized that the RFC determination is well within the scope of the ALJ's authority as it requires consideration of not only the relevant medical evidence but also the evidence contained in the record as a whole. *Smith v. Saul*, 413 F. Supp. 3d 1140, 1144 (N.D. Ala. 2019). The opinion of a physician who examines the claimant on only one occasion is generally not entitled to great weight. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). Further, requiring the ALJ to accept the conclusions of a medical expert would fundamentally abdicate the Commissioner's statutory responsibility to determine whether the claimant is disabled and entitled to benefits. *See* SSR 96-5p, 1996 WL 374183 (July

2, 1996). Thus, the ALJ is not required to take the conclusions and recommendations of medical experts at face value.

In this case, the ALJ concluded that Dr. Iyer's opinions did not appear to be supported by the record, "especially in light of the primar[il]y normal findings obtained from medical care providers." (R. 45). Dr. Iyer concluded that Plaintiff would only be able to stand for fifteen minutes at a time for a total of twelve percent of the time in an eight-hour period; can only walk for ten minutes at a time for a total of twelve percent in an eight-hour period; can only sit for twenty minutes at a time for a total of seventy-five percent of the time in an eight-hour period; can only lift and/or carry ten pounds, can never climb ladders or ropes, stoop, kneel, crouch, or crawl. (R. 45, 337). But, as the ALJ noted, these conclusions are inconsistent with the record as a whole and also inconsistent with Dr. Iyer's own physical exam notes. (*Id.*). Dr. Iyer's treatment notes state that Plaintiff has difficulty walking and is not able to stand for long periods; however, Plaintiff does not require the use of an ambulatory assistive device and has normal range of motion of the "neck, shoulders, back, elbows, wrists, hands, and feet." (*Id.*). Additionally, Dr. Iyer based his opinion on only one examination and that opinion is inconsistent with those of other various medical care providers. (R. 336-38). For example, several of Plaintiff's medical care providers reported that on multiple occasions Plaintiff was alert and oriented, exhibited no weakness or fatigue, exhibited normal motor function, normal gait, and normal reflexes of her muscles without a finding of abnormality. (R. 298, 320, 329, 427, 441, 449-50, 454, 462, 470). Thus, the ALJ's decision to afford lesser weight to Dr. Iyer's opinion based on its inconsistency with statements in his own findings and its inconsistency with other medical information in the record is supported by substantial evidence. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

Similarly, the ALJ found that Dr. Estock's opinion as a consulting physician conflicted with a majority of the record medical evidence.  (R. 45-46).  For example, Dr. Estock's conclusion that Plaintiff can frequently perform a range of medium work and can occasionally climb ladders, ropes, or scaffolds, is not supported by the evidence presented at the hearing level (which did not support such excessive physical activity).  (R. 45, 60-77).  Further, Dr. Estock's opinion that Plaintiff would need a "well-spaced work environment for maximum concentration" while working and that she would likely miss one or two days out of every thirty-day period due to her psychological symptoms is inconsistent with Plaintiff's treatment notes and the clinical assessments of Dr. Teschner, Dr. Herrera, and others.  (R. 45-46, 360-65, 423-28).  These clinical assessments consistently reported that Plaintiff was generally pleasant, cooperative, and friendly; her psychomotor activity was within normal limits; she engaged in normal speech; her thought process was linear and goal directed; and that she had intact cognition, insight, and judgment.  (R. 302-03, 305-06, 310, 353-54, 357, 362, 364, 423-28, 419-34, 443).  Thus, Dr. Estock's conclusion regarding Plaintiff's psychological symptoms is inconsistent with the medical evidence as a whole. As such, the ALJ's decision to afford little weight to Dr. Estock's opinion and find the medical care progress treatment notes as "more persuasive" is supported by substantial evidence in the record.  (R. 46).

Based on the administrative record, the ALJ's analysis properly evaluated the treating physicians' opinions as necessary under 20 C.F.R. §§ 404.1567(a) and 416.967(a).  The court thus concludes that the ALJ's decision to afford the opinions of Dr. Iyer and Dr. Estock lesser weight is supported by substantial evidence in the record.

### ii.   Plaintiff's Claim of Bias is Meritless.

Plaintiff also argues that the ALJ's denial of her claims for disability, SSI, and DIB are a result of the ALJ's general bias against claimants seeking disability. (Pl.'s Br., Doc. # 11, at 24-28). In support of this contention, Plaintiff relies on *Wilder v. Chater*,[2] a Seventh Circuit decision involving judicial bias against a claimant seeking disability. Plaintiff's reliance on *Wilder* is misplaced because the facts in *Wilder* are drastically different from those presented here. Further, Plaintiff cites to multiple cases involving the ALJ in this case to demonstrate a pattern of prejudice against claimants generally.[3] (*Id.*). Plaintiff's reliance on the ALJ's previous decisions involving bias to support her current claim that bias occurred in this case is without merit.

In evaluating Plaintiff's bias claim, the court is mindful of two legal principles. First, a presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies. *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The burden of overcoming that rests squarely on the party making the assertion of bias. And, the presumption can be overcome only with convincing evidence that "a risk of actual bias or prejudgment" is present. *McClure*, 456 U.S. at 195-96. Bias must be "evident from the record and cannot be based on mere speculation or inference." *Navistar Int'l Transp. Corp. v. United States Envtl. Protection Agency*, 941 F.2d 1339, 1360 (6th Cir. 1991). To be disqualifying, bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*,

---

[2] *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995) (holding that there is a degree of suspicion when an ALJ's decision goes against the only medical evidence in a case). In *Wilder*, the ALJ refuted the only medical evidence that was in the record—medical opinions formulated by a psychiatrist appointed by the ALJ. However, in contrast to the facts of *Wilder*, evidence has been presented from numerous independent physicians and not from a single source. Accordingly, this court finds Plaintiff's reliance on *Wilder* misplaced.

[3] *See e.g.*, *Small v. Barnhart*, 329 F.Supp. 2d 1272, 1278 (N.D. Ala. 2004); *Edwards v. Barnhart*, 319 F.Supp. 2d 1283 (N.D. Ala. 2004); *Hagg v. Barnhart*, 333 F.Supp. 2d 1210 (N.D. Ala. 2004).

384 U.S. 563, 583 (1966). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 556 (1994). A plaintiff can rebut the presumption only by showing a conflict of interest or some other specific reason for disqualification. *See McClure*, 456 U.S. at 195-96.

Second, a claimant is entitled to a full and fair hearing. *Miles v. Charter*, 84 F.3d 1397, 1400 (11th Cir. 1996). However, this legal principle does not reside in the abstract. Even when a hearing before an ALJ is less than "totally satisfactory," remand is unwarranted unless the claimant can show prejudice. *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985); *see also Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997) (noting that a showing of prejudice must be made before a court will find that a hearing violated a social security claimant's rights of due process to such a degree that the case must be remanded to the [Commissioner] for further development of the record). The Eleventh Circuit has concluded that this showing "at least" requires a demonstration that the ALJ did not have all of the relevant evidence before them in the record, or that the ALJ did not consider all of the evidence of record in reaching a decision. *Kelley*, 761 F.2d at 1540.

As noted above, a presumption exists that judicial and quasi-judicial officers, including ALJs, are unbiased. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 920 (11th Cir. 2019). This presumption may be overcome by "a showing of a conflict of interest or some other specific reason for disqualification," but the burden for such a showing is on the party asserting such bias. *McClure*, 456 U.S. at 195-96. But, an allegation of general bias is immaterial if there is no indication of error in a claimant's particular case. *Allenstein ex rel. Estate of Small v. Barnhart*, 419 F. Supp. 2d 1336, 1337 (N.D. Ala. 2006).

Here, Plaintiff has failed to make the required showing of bias.  Plaintiff attempts to prove that bias occurred in two ways: (1) by asserting that the ALJ is generally biased against all claimants seeking disability and SSI benefits; and (2) by alleging that the ALJ substituted his opinion for those of Dr. Iyer and Dr. Estock. First, Plaintiff's attempt to demonstrate a pattern of bias against claimants generally by the ALJ is insufficient. *Kelley*, 761 F.2d at 1540.  In this case, Plaintiff asserts that bias must have occurred in her case because Judge Guin found the potential for bias in previous cases involving the same ALJ (more than fourteen years ago).[4]  (Pl.'s Br., Doc. # 11, at 25-27).  Without more, Plaintiff's general claim of prejudice and attempt to prove that the ALJ possessed a general bias against claimants in this manner is insufficient.  *See McClure*, 456 U.S. at 195-96; *accord Coley*, 771 F. App'x at 921 (reasoning that a generalized assumption that Plaintiff was prejudiced is not enough to overcome the presumption that the ALJ was unbiased).

Plaintiff also claims that the ALJ substituted his own opinion for those of Dr. Iyer and Dr. Estock; however, that argument is baseless. Plaintiff has offered no evidence that sufficiently demonstrates the ALJ improperly assessed the weight to be given to the two medical source opinions or that the ALJ substituted his own interpretation of the medical record.  *See McClure*, 456 U.S. at 195.  Indeed, the ALJ's decision to afford lesser weight to the medical source opinions of Dr. Iyer and Estock is amply supported by substantial evidence in the record.  (R. 40).

**B.     The Appeals Council Properly Denied Plaintiff's Request for Review.**

Plaintiff asserts that the Appeals Council improperly refused to consider supplemental evidence after the ALJ's October 25, 2018 decision.  (Pl.'s Br., Doc. # 11, at 28).  However, this claim is also without merit because, as the Appeals Council properly determined, Plaintiff's additional evidence, although "new," would not have changed the outcome of the decision.  The

---

[4] Further, the court is unable to reach the same conclusion as Judge Guin on the issue of the ALJ's bias.

Appeals Council's decision to deny review was correct based upon the medical evidence in the record.

The Appeals Council must review additional evidence if the evidence relates to the period on or before the ALJ's hearing decision, and there is a reasonable probability that the evidence would change the outcome of the decision. *See* 20 C.F.R. § 404.970(a)(5); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1262 (11th Cir. 2007). New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); *Ingram*, 496, F.3 at 1261; *see also Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (noting the issue in a matter involving disability is whether a claimant was "entitled to benefits during a specific period of time, which was necessarily prior to the date of the ALJ's decision"). Evidence is considered "material" if a reasonable probability exists that the evidence would change the administrative decision. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). In reviewing the Appeals Council's decision, the district court must consider the entire record, including the additional evidence, to determine "whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496, F.3 at 1266-67.

Here, the Appeals Council properly found that Plaintiff's treatment notes, which were dated after the ALJ's decision, did not relate to the period in question. (R. 2, 15-20). Plaintiff's additional records from Quality of Life Health Services, were dated January 2, 2019, almost three months after the ALJ rendered his decision on October 25, 2018. (R. 15-22). Thus, the Appeals Council decision to deny review of Plaintiff's additional evidence based on their chronological irrelevance is proper.

Additionally, as the Appeals Council properly concluded, Plaintiff's additional evidence did not yield a reasonable probability that the evidence, even if considered, would change the

outcome of the decision.  (R. 2).  Dr. Herrera's one-page medical statement did not address the medical records reviewed and seemingly only described a diagnosis of post-traumatic arthritis.  (R. 14).  In any case, the diagnosis of a condition or existence of a symptom, by itself, does not establish functional impairments. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (recognizing that a diagnosis alone is insufficient and that a claimant must demonstrate the effect of the impairment on her ability to perform work).  Thus, Dr. Herrera's statement, when considered alone or in conjunction with the medical evidence in the record, does not support a finding that there is a reasonably probability that the evidence would change the outcome of the ALJ's decision. Therefore, the Appeals Council's decision to deny review was proper.

### C.      The ALJ's Decision is Supported by Substantial Evidence in the Record.

Finally, Plaintiff contends that the ALJ's decision as a whole was not based on substantial evidence because (1) the ALJ failed to afford proper weight to two of her reviewing medical sources, Dr. Iyer and Dr. Estock, and (2) the Appeals Council failed to review the denial and to consider new, material, and chronologically relevant, post decision submissions, including a Physical Capacities Evaluation Form, completed by a treating physician. (Pl.'s Br., Doc. # 11, at 42). After review of the entire record, and for the reasons set forth above, the ALJ's decision to deny benefits to Plaintiff is supported by substantial record evidence.

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court is not free to decide the issues in the case *de novo*. Rather, the court's function is to "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

An ALJ is obligated to explore all relevant facts in order to develop a full and fair record. *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). Here, after careful review, the court concludes the ALJ did just that. For example, the ALJ's assessment of Dr. Iyer's and Dr. Estock's opinions in the context of the record evidence indicates that the ALJ conducted an analysis of the entire medical record and compared it to the opinions of Dr. Iyer and Dr. Estock. (R. 40-48). Contrary to Plaintiff's allegations, the ALJ did not substitute his own opinions for that of the medical experts; rather, the ALJ fulfilled his obligation to explore all relevant facts and evidence for the sake of developing a full and fair record. The ALJ's analysis and resulting conclusion is supported by substantial evidence in the record. (R. 42-48).

Additionally, Plaintiff's contention that the ALJ's decision was not based on substantial evidence in light of the Appeals Council's decision is unfounded. As previously discussed, the Appeals Council's decision to deny review of Plaintiff's additional evidence was properly determined to be chronologically irrelevant and did not yield a reasonable probability to change the outcome. At the time of the decision, the ALJ fulfilled his obligation to develop a full and fair record given all evidence provided. As such, the ALJ's decision was based on substantial evidence presented from all sources available at the time of the decision.

In conclusion, because the ALJ examined the entire record, and because the Appeals Council's decision to deny review of additional materials was proper, this court finds that the ALJ met his obligation to develop a full and fair record and that substantial evidence supports his decision. (*Id.*).

16

## VI.    CONCLUSION

Upon review of the administrative record, and considering Plaintiff's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law.  A separate order that is consistent with this memorandum of decision will be entered.

**DONE** and **ORDERED** this September 28, 2020.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE